## BROWN v. ZAUBITZ.

### (Circuit Court, S. D. New York. December 10, 1900.)

PATENTS—PRIOR USE—PYROMETERS.

    The Brown patent, No. 520,875, for improvements in pyrometers, the essential feature of which is a compensating stem, made of alternating sections of iron and brass, *held* void for prior use, on evidence showing beyond a reasonable doubt that exhibits produced in court, and containing all the elements of the infringing article, had been made and sold by defendant several years before the date of the alleged invention by the patentee.

In Equity. Suit for infringement of patent. On final hearing.

Joseph C. Fraley and C. V. Edwards, for complainant.
Lemuel Skidmore and Eugene K. Sackett, for defendant.

COXE, District Judge. This is an equity action for the infringement of letters patent, No. 520,875, granted to the complainant June 5, 1894, for an improvement in pyrometers. The claims involved are the first, second and fourth. The principal improvement relates to an outside expansion tube having an inside bar and a sliding rod, the rod being proportioned in its expansion per degree of heat in excess of that of the tube-inclosing it. The rod is composed of alternating sections of iron and brass fastened together and rests upon a bar of graphite at the bottom of the tube, the lower end of the tube being closed. The rod is provided with guides to facilitate its move-

ment in the tube. The upper end of the tube is open to enable the composite rod to connect with the indicating mechanism in the head of the pyrometer. It is upon the introduction of this rod, composed of alternating sections of iron and brass, and resting upon a bar of plumbago-ware or other material, which expands less than the tube, that the claim of invention rests. For convenience the instrument now under consideration will be termed the compensating stem pyrometer. The application for the patent was filed September 6, 1893. This date, in the absence of other testimony, is agreed upon as the date of the complainant's alleged invention. The defense is that the defendant, since 1881, has made and sold a large number of instruments identical in all essential features with the complainant's pyrometer. The situation is in many of its aspects similar to that found in the platinum pyrometer case and it is unnecessary to repeat what was there said. It must, however, be conceded that the proof of prior use is infinitely stronger and that many of the criticisms in the former case have no application to the evidence here. Some of the important points of difference may be briefly summarized as follows:

First: The time during which it is asserted that defendant made and sold anticipating instruments extends over a period of 12 years or twice the period of the former case.

Second: The defense is sustained by 11 witnesses, some of them wholly disinterested and apparently men of high character and intelligence.

Third: Two pyrometers having the expansion rod of the patent and which were purchased long prior to the application for the patent are actually in evidence, their identity being established by the purchasers, who are men whose character is above reproach. In short, the "oral testimony" is supported by "exhibits tending to show prior use."

Fourth: There is no positive and direct declaration by the defendant, as in the prior case, that the improvement was made subsequent to 1895. There are statements on page 6 of catalogue No. 4 from which such an inference may be drawn, but it is not the absolute demonstration found upon page 7. The illustrative diagram is similar to those found in previous catalogues and does not show the expansion rod. There is nothing in the statement on page 7 absolutely incompatible with the previous use of the compensating stem as stated by the witnesses.

Fifth: The improvement in controversy is hidden from view and cannot be examined without dismembering the instrument. The complainant may have seen pyrometers having the composite rod without knowing what the tube contained. In reaching a conclusion favorable to the defendant it is not, therefore, necessary to charge the complainant with bad faith, as in the other case, where the platinum strip was in plain sight, and must have attracted his attention when he visited the defendant's shop, had it been on exhibition there.

Sixth: The nature of the improvement is such that it is not impossible that two mechanicians might have adopted it independently of each other. The complainant's witness Ryan testifies that the defendant made pyrometers with the expansion rod resting on a bar

of graphite, and also that he made pyrometers with a combination stem which he describes as follows:

"A half-inch iron pipe outside, with a plug screwed at the bottom and a portion of the interior stem was made either of copper or brass, and the top of it was connected with an iron pipe, a nipple joining both together to secure them fast." The length of the sections of the interior stem "depend how deeply it was inserted in the heat. If it was to be immersed twelve inches in the heat the brass or copper was twelve inches long."

Concededly, then, the defendant was familiar with the use of graphite and of an expansion rod made of iron and brass. The step from these to the construction of the infringing instrument was not an unnatural one. It surely required no disintegration of brain tissue to accomplish the task and it may well be doubted whether invention can be based upon the change from the prior art, as Ryan describes it, to the device of the patent. The complainant concedes it to be "a minor invention addressed to the improvement of an existing instrument." It is enough, however, for the present discussion that the defendant was fully competent to make the change, and there are no conclusive presumptions, as in the other case, against his having done so.

Enough has been said to indicate the lines of departure between the two cases and to demonstrate that the defense in the case now in hand is much stronger and the complainant's reply to it much weaker than in the former case. Eleven witnesses of intelligence and character testify to a great number of instances of prior use in circumstances which make it almost impossible for them to be in error. It is true that the court has found that eight of these witnesses were mistaken regarding the prior use of the platinum pyrometer, but, as before stated, this conclusion was mainly based upon two considerations lacking here, namely, the failure to produce exhibits and the unanswerable statements of the defendant that his platinum pyrometer was produced after the date of the patent. It is unnecessary to analyze the testimony of these witnesses, but two of them, Neubeck and Somers, require more than a passing comment. Mr. Neubeck is engaged in manufacturing and selling mechanical, scientific and optical instruments on Twenty-Third street, New York. In 1890 he purchased of the defendant a pyrometer with a short stem to fit his show case and he has had it in his possession ever since. The year is fixed by a bill dated August 28, 1890, which is not only identified by Neubeck and the defendant, but bears on its face persuasive evidence that it refers to the pyrometer in question. It is for "1 combination stem pyrometer latest improved reg. 1400° F. 18.00." The pyrometer was produced in court and offered in evidence. It is a "combination stem pyrometer" and registers 1,400°. Upon being taken apart in court it was found to contain all the elements of the infringing exhibit. As to one of the exhibits produced by the defendant it was admitted at the argument that it contained every essential feature of the patented structure, and it is the recollection of the court that the admission applied to both exhibits, leaving only the date of their construction in dispute. An attempt was made upon cross-examination to show that the witness had purchased other

pyrometers of the defendant and that the bill may have referred to one of these, but the attempt failed. In summarizing this branch of the argument the complainant's brief says,

"As Zaubitz has undoubtedly been making this infringing device since the year 1895, and as the witness admits that he has sold them since that date, how easy it is to simply attach the bill of August 28, 1890, to the instrument now produced and make a perfect story."

But this supposition overlooks the unquestioned fact that the pyrometer was in Neubeck's store in Nassau street, and was made expressly to fit a show case which he had in that store, and that he moved from Nassau street to Twenty-Third street in 1893 or 1894. No impartial person can read Neubeck's testimony and not be convinced that he had this pyrometer in his show case long prior to September, 1893.

The other witness is Daniel M. Somers. Mr. Somers is a mechanical engineer and a manufacturer of metal goods. He has had a lifelong experience in the business. In 1892 he started the manufacture of tin plate and needed to use pyrometers. He found the defendant through the business directory and purchased three pyrometers of him. The bill is dated March 17, 1892, and the check which paid the bill is dated April 26, 1892. One of these was a horizontal pyrometer, which, on being tested, was found to be useless and was returned to the defendant who supplied a perpendicular one in its place. This pyrometer, which was furnished within 40 days of the original purchase, has been kept ever since in the possession of Mr. Somers. The pyrometer was brought into court by a messenger employed by him, and upon being examined was found, like the Neubeck exhibit, to contain all the essential features of the patented and infringing instruments. Nothing was developed upon cross-examination to weaken the force of this evidence. It all occurred in a presidential year when the tariff was "the paramount issue," and when tin plate played a conspicuous part in the campaign. As the witness was among the first to manufacture the much-debated plates, some of them being exhibited at public meetings, it is only natural that the facts regarding them should be impressed upon his memory.

The court has endeavored to consider this evidence from every point of view and with a desire to do exact justice to the complainant, but it has been impossible to resist the conclusion that the defense of prior use has been established beyond a reasonable doubt. There is no tenable theory upon which the court can disregard the testimony. Its force cannot be disguised by any refinement of dialectics. Neubeck corroborated by Somers and both corroborated by eight or nine other witnesses make a case too strong to be arbitrarily rejected. If a party were on trial for a felony and his conviction depended upon proof by the prosecution that the anticipating pyrometers were in the hands of Neubeck and Somers prior to September, 1893, the court is convinced that a jury after listening to this testimony would without hesitation return a verdict of guilty.

The court had a somewhat similar state of facts to consider in Webbing Co. v. Nicholls (C. C.) 70 Fed. 1009, and many of the observations there made are applicable to the present case. It follows that the bill must be dismissed.